# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

Canvasfish.com, LLC,
a Montana Limited Liability Company,

    Plaintiff,

        v.

JOHN DOES 1-XX,

    Defendants.

Case No.: 1:21-cv-03676
Hon. Virginia M. Kendall

## PLAINTIFF'S CORRECTED *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, TEMPORARY TRANSFER OF THE DOMAIN NAMES, TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY

Plaintiff Canvasfish.com, LLC ("Plaintiff" or "Canvas") seeks entry of an *ex parte* temporary restraining order, including a temporary injunction against Defendants enjoining the publication, manufacture, importation, distribution, offering for sale, and sale of unauthorized products, a temporary transfer of the Domain Names, a temporary asset restraint, and expedited discovery in an action arising out of 15 U.S.C. § 1114; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and the U.S. Copyright Act, 17 U.S.C. § 101, *et seq*. A Memorandum of Law in Support is filed concurrently with this Motion.

Respectfully submitted,

Date: September 22, 2021

Canvasfish.com, LLC

/s/ Amanda Osorio
Amanda Osorio
Eric Misterovich
*Attorneys for Plaintiff*
Revision Legal, PLLC
444 Cass St., Suite D
Traverse City, MI
49684 Phone: (231) 714-0100

eric@revisionlegal.com
amanda@revisionlegal.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

CANVASFISH.COM, LLC,
a Montana Limited Liability Company,

    Plaintiff,

v.

JOHN DOES 1-XX,

    Defendants.

Case No.: 1:21-cv-03676
Hon. Virginia M. Kendall

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, TEMPORARY TRANSFER OF THE DOMAIN NAMES, TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Canvasfish.com, LLC ("Plaintiff" or "Canvasfish") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary transfer of the Domain Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff requests temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, false designation of origin, and copyright infringement against the defendants identified on Schedule "A" to the Complaint (collectively the "Defendants"). As alleged in Canvasfish's Complaint, Defendants are promoting, marketing, distributing, offering for sale, and selling products, including clothing and fashion accessories, using infringing and counterfeit versions of Canvasfish's federally registered trademark, unauthorized copies of Canvasfish's federally registered copyrighted works and designs, or both (collectively, the "Unauthorized Canvasfish Products"), through, at least, fully interactive e-commerce stores operating under several aliases and at several domain names.

1

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can view and purchase Unauthorized Canvasfish Products. The e-commerce stores operating under the aliases share unique identifiers establishing a logical relationship between them. Further, defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Canvasfish is forced to file these actions to combat Defendants' counterfeiting of its registered trademark and infringement of its registered copyrights, as well as to protect unknowing consumers from purchasing Unauthorized Canvasfish Products over the Internet. Defendants' ongoing unlawful activities should be immediately restrained, and Plaintiff Canvasfish respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Canvas's Trademarks, Copyrights, and Products

The Canvasfish business began in 2007 with the purpose of promoting the artistic works of Derek DeYoung and marketing said works along with apparel and accessories upon which DeYoung's artistic works are placed. The Canvasfish business and Derek DeYoung's artistic works are globally and nationally renowned for their unique take on sport fishing species, particularly those popular among fly-fishers. The business has continued to grow in reputation and goodwill due to widespread acceptance by consumers. Exhibit A – Declaration of Derek DeYoung (the "DeYoung Declaration") at 3. The Canvasfish.com website prominently displays Canvasfish's federally registered DEYOUNG trademark, (Registration No. 6,157,362), as well as its federally registered copyrighted works. Canvasfish includes the DEYOUNG mark on its website as a service mark for online retail services featuring artwork, apparel, stickers, phone cases, drinkware, blankets, playing cards, boat wraps, coasters, and coolers. Canvasfish also uses the DEYOUNG mark on many of its original works of art,

namely paintings and drawings. The DEYOUNG mark serves as a source indicator at the point of sale online, on product listing images, within product listing titles and descriptions, on the website banner, and on the print copies of most artistic works sold through the website and at authorized physical retail locations. *Id.* at 6. A true and correct copy of the United States registration certificate for the registered DEYOUNG mark is attached to the DeYoung Declaration as Exhibit 1. The registration for the DEYOUNG mark is valid, subsisting, and in full force and effect. *DeYoung Declaration* at 4. The registration for the DEYOUNG mark constitutes *prima facie* evidence of its validity and of Canvasfish's exclusive right to use the registered DEYOUNG mark in commerce, pursuant to 15 U.S.C. § 1057(b).

Canvasfish's website is frequented by fly-fishing and art enthusiasts alike. The DEYOUNG mark is well-known and distinctive in its application to online retail services offered by Canvasfish and for its use on the original artistic works of Derek DeYoung. Services and Products bearing the DEYOUNG mark signify to the consumer a high quality and dedication to detail. *Id.* at 4. Because the DEYOUNG mark has achieved such high recognition and distinction among consumers, the goodwill associated with the mark is of incalculable and inestimable value to Canvasfish.

Canvasfish has also registered many of its copyrighted artistic works with the United States Copyright Office (the "Canvasfish Copyrighted Works"). *Id.* at 7. Evidence of the U.S. federal copyright registrations for the Canvasfish Copyrighted Works are attached to the DeYoung Declaration as Exhibit 2. Among the exclusive rights granted to Canvasfish under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, display, and import copies of the Canvasfish Copyrighted Works to the public.

### B. Defendants' Unlawful Activities

The success of Canvasfish's business efforts and goodwill acquired over time has resulted in the brand being targeted by counterfeiters. *Id.* at 8. Consequently, Plaintiff Canvasfish has invested significant time, effort, and resources in investigating the infringement and counterfeiting efforts on

3

the Internet. *Id.* Recently, Canvasfish has identified several fully interactive e-commerce stores, including those operated by Defendants which were and/or are offering for sale and/or selling Unauthorized Canvasfish Products to consumers within this Judicial District and throughout the United States. *Id.* Canvasfish's well-pleaded allegations regarding infringement by Defendants, including similarities among the e-commerce stores operated by Defendants, the Unauthorized Canvasfish Products sold thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that the Defendants are an interrelated group of counterfeiters. *Id.* at 11-13. If Defendants provide additional credible information regarding their identities, Canvasfish will take appropriate steps to amend its Complaint.

### III.     ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Canvasfish's reputation, and the goodwill symbolized by Canvasfish's DEYOUNG mark and the Canvasfish Copyrighted Works. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue and *ex parte* Temporary Restraining Order ("TRO") where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their continued wrongful use of the DEYOUNG mark and the Canvasfish Copyrighted Works and would preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who

4

deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Canvasfish respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Copyright Act, 17 U.S.C. § 501, *et seq.*; 28 U.S.C. §§ 1338(a)-(b); and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more aliases through which Illinois residents can purchase Unauthorized Canvasfish Products. *See* Complaint at ¶ 4-5 [ECF 1]. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at 6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Canvasfish substantial injury in the State of Illinois.

**A. Standard for Temporary Restraining Order and Preliminary Inunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against

the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has referred to as "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need to favor the plaintiff's position. *Id.*

### B. Canvasfish Will Likely Succeed on the Merits

#### i. Trademark Infringement, Counterfeiting, and False Designation of Origin

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Canvasfish's Lanham Act claims involve all necessary elements to satisfy a finding that Defendants are liable for trademark infringement and counterfeiting. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, a plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, Canvasfish's DEYOUNG mark is distinctive and is registered with the United States Patent and Trademark Office. DeYoung Declaration at 5. The registration for the DEYOUNG mark constitutes *prima facie* evidence of its validity and of Canvasfish's exclusive right to the use of the DEYOUNG mark in commerce pursuant to 15 U.S.C. § 1057(b). Canvasfish has not licensed or authorized Defendants to use the DEYOUNG mark and none of the Defendants are authorized retailers

6

of genuine Canvasfish Products. *Id.* at 9. Thus, Canvasfish satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Therefore, the Court can presume a likelihood of confusion from Defendants' unlawful use of the DEYOUNG mark alone. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether a likelihood of consumer confusion exists, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Canvasfish has compiled and submitted extensive documentation showing that Defendants are selling Unauthorized Canvasfish Products that look similar to authentic Canvasfish Products and use infringing and counterfeit marks identical and confusingly similar to the DEYOUNG mark. DeYoung Declaration at 10. Both Canvasfish and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Canvasfish Products. *Id.* Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing between genuine Canvasfish Products and Unauthorized Canvasfish Products. Defendants appear to be intentionally attempting to induce consumers searching for genuine Canvasfish Products into purchasing Unauthorized Canvasfish Products bearing the DEYOUNG mark. Accordingly, Canvasfish is likely to establish a *prima facie* case of trademark infringement, trademark counterfeiting, and false designation of origin.

        ii.    <u>Copyright Infringement</u>

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Canvasfish under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Canvasfish Copyrighted Works to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Canvasfish is the owner of the relevant federally registered copyrights. As to the second element, Defendants are willfully and deliberately reproducing the Canvasfish Copyrighted Works in their entirety and are willfully and deliberately distributing copies of the Canvasfish Copyrighted Works to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the Canvasfish Copyrighted Works. This blatant and extensive copying by Defendants infringes upon Canvasfish's exclusive rights granted under 17 U.S.C. § 106. As such, Canvasfish has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

### C. There Is No Adequate Remedy at Law and Canvasfish Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of Canvasfish's DEYOUNG mark has and continues to irreparably harm Canvas through diminished goodwill and brand confidence, damage to Canvasfish's reputation, and loss of future sales. DeYoung Declaration at 14-18. Defendants' advertising and work to increase traffic to their websites, including e-commerce storefronts using Seller Aliases, is and will continue to permanently damage Canvasfish's own Search Engine Optimization ("SEO") and website traffic it has worked to build over the life of the business. The extent of the harm to Canvasfish's reputation and goodwill, and the probable diversion of customers due to loss in brand confidence and damage to SEO are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *Id.* at ¶ 15.

9

*See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Canvasfish will suffer immediate and continued irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). DeYoung Declaration at 20.

### D. The Balancing of Harms Tips in Canvasfish's Favor and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Canvasfish has adequately demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Canvasfish will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at this own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Canvasfish has demonstrated, Defendants have been profiting from the sale of Unauthorized Canvasfish Products. Thus, the balance of equities tips decisively in Canvasfish's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Canvasfish's approval and endorsement. In this case, the injury to the public is great, and the injunctive relief that Canvasfish seeks is specifically intended to remedy that injury by dispelling

the public confusion created by Defendants' actions of infringement. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Canvasfish Mark and Canvasfish Copyrighted Works Is Appropriate

Canvasfish requests a temporary injunction requiring Defendants to immediately cease all use of Canvasfish's DEYOUNG mark or substantially similar marks and/or copying and distribution of the Canvasfish Copyrighted Works, on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to Canvasfish and the DEYOUNG mark and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the DEYOUNG mark and/or copying and distribution of the Canvasfish Copyrighted Works. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Canvasfish is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Unauthorized Canvasfish Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (order granting *ex parte* Motion for Temporary Restraining Order).

### B. Transferring the Defendant Domain Names to Canvasfish Is Appropriate

As part of the TRO, Canvasfish also seeks temporary transfer of the Domain Names to Canvasfish's control in order to disable the counterfeit websites and electronically publish notice of

this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). As such, Canvasfish respectfully requests that, as part of the TRO, the Court require the relevant registries and/or registrars for the Domain Names to transfer the Domain Names to Canvasfish.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Canvasfish requests an *ex parte* restraint of Defendants' assets to ensure an equitable accounting of Defendants' profits from sales of Unauthorized Canvasfish Products unimpaired by fraudulent transfer. Canvasfish has also filed a Motion to file under Seal in accordance with this goal. Issuing and *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, on information and belief, the Defendants in this case are residents of China and hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Canvasfish meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Canvas has shown a strong likelihood of succeeding on the merits of its trademark infringement, trademark counterfeiting, and unfair competition claims, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Canvasfish is entitled, "subject to the principles of equity, to recover . . . defendant's profits." Similarly, Canvasfish has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, and therefore is entitled to recover ". . . any profits of

the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Canvasfish's complaint seeks, among other relief, that Defendants account for and pay to Canvasfish all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Canvasfish's request for a prejudgment asset freeze to preserve relief sought by Canvasfish.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (*citing Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Canvasfish has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts beyond the reach of this jurisdiction. Accordingly, an asset restraint is proper.

### D. Canvasfish Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Canvasfish respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Canvasfish's Proposed TRO, attached to Plaintiff's Motion as Exhibit A, is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Canvasfish's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Canvasfish respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Canvasfish's evidence of counterfeiting, trademark infringement, and copyright infringement, Canvasfish respectfully requests that this Court require Canvasfish to post a bond of no more than ten thousand U.S. dollars ($10,000.00) at such time the Court re-opens for in-person civil proceedings. *See, e.g., Deckers Outdoor Corp. v. The Partnerships, et al.* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) (referencing the appropriate nature of the $10,000 bond).

### VI. CONCLUSION

Defendants' unlawful operations are irreparably harming Canvasfish's business, its distinctive DEYOUNG brand, and consumers. Without entry of the requested relief, Defendants' advertising and sale of Unauthorized Canvasfish Products will continue to lead prospective purchasers and others to believe that defendant's Unauthorized Canvasfish Products have been manufactured by or emanate from Canvasfish, which in fact, they have not. Therefore, entry of an *ex parte* order is necessary in this

case. In view of the foregoing and consistent with previous similar cases, Canvasfish respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Respectfully submitted,

Date: September 22, 2021　　　　　　　　Canvasfish.com, LLC

　　　　　　　　　　　　　　　　　　　　/s/Amanda Osorio
　　　　　　　　　　　　　　　　　　　　Amanda Osorio
　　　　　　　　　　　　　　　　　　　　John Di Giacomo
　　　　　　　　　　　　　　　　　　　　Eric Misterovich
　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　Revision Legal, PLLC
　　　　　　　　　　　　　　　　　　　　444 Cass St., Suite D
　　　　　　　　　　　　　　　　　　　　Traverse City, MI 49684
　　　　　　　　　　　　　　　　　　　　Phone: (231) 714-0100
　　　　　　　　　　　　　　　　　　　　Fax: (231) 714-0200
　　　　　　　　　　　　　　　　　　　　john@revisionlegal.com
　　　　　　　　　　　　　　　　　　　　eric@revisionlegal.com
　　　　　　　　　　　　　　　　　　　　amanda@revisionlegal.com

**Certificate of Service**

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I will electronically publish the documents on a website to which the Domain Names have been transferred to Plaintiff's control now redirects, and to which the non-Domain Defendants have previously been directed and served.

                                              Respectfully submitted,

Date: September 22, 2021              /s/ Amanda Osorio
                                              Revision Legal, PLLC
                                              444 Cass St., Suite D
                                              Traverse City, MI 49684
                                              Phone: (231) 714-0100
                                              Fax: (231) 714-0200
                                              amanda@revisionlegal.com

                                              *Attorneys for Plaintiff Canvasfish.com, LLC*